## Righi Estate

*Edward J. Blatt*, and *Gleason, Cherry & Cherry*, for accountant.

*Pontzer & Pontzer*, and *Bell, Silverblatt & Swoope*, for exceptant.

TRAMBLEY, P. J., August 7, 1959.—This case is before the court on exceptions to the first and final account of Paul J. Short, administrator of the estate of

Guirino Righi, late of Jay Township, Elk County, deceased.

Guirino Righi lived in Cardiff, Jay Township, Elk County, in a house owned by a mining company. Mr. Righi formerly worked in the mines but at the time of his death was retired and was receiving a miner's pension.

He had only three or four neighbors, at the most, in Cardiff, one of whom was John Serafini, who lived with his family in Cardiff. Righi and another man jointly occupied the house they lived in for which they paid $7 a month rent.

When Mr. Righi died in the Maple Avenue Hospital at Dubois, Clearfield County, Mr. Serafini contacted Paul J. Short, an undertaker in Dubois to conduct his funeral. At the time it was not known to Mr. Serafini or to Mr. Short, the undertaker, whether or not Mr. Righi had any relatives.

On July 27, 1956, letters of administration were issued to Paul J. Short, he being a creditor of the estate, the undertaker who conducted his funeral. Mr. Guirino Righi died on Friday, July 6, 1956. The application for letters of administration states that the said Paul J. Short was engaged by John Serafini of Force, to handle the funeral of said deceased. Mr. Serafini was not related to Mr. Righi and was not his agent or representative in any way.

On October 28, 1958, Paul J. Short, administrator of the estate of Guerino Righi, filed his first and final account in the office of the Register of Wills of Elk County.

This account showed that the total estate of decedent amounted to $8,174.44 and that the total expenses were $6,153.30. The items of expense were: Paul J. Short, funeral bill, $4,183.46; Paul A. Garner, Register of Wills, inheritance tax, $1,002.40; Elliott

470

and Kime, Inc., bond premium, $150; administrator's and attorney's fees, $817.44.

Some time after the burial of decedent it was learned that decedent was survived by two cousins, Santo Guella and Luigi Guella, one of whom lives in the State of Kentucky and the other in Italy. Exceptions were filed on behalf of both cousins. The only item to which exception is taken is the funeral bill of Paul J. Short amounting to $4,183.46. The basis of the exception in each case was that the funeral bill was grossly excessive and exorbitant in view of the size of the estate of decedent. The exceptions asked that the amount allowed for the funeral be reduced to a figure in keeping with the station in life of decedent and the size of the estate.

A hearing was held in the matter in this court on Monday, July 6, 1959, at which time the testimony of the administrator and John Serafini were taken on behalf of the administrator and the testimony of Anthony Assalone was taken on behalf of exceptants.

The only authorization which Mr. Short had for conducting the funeral of decedent was that he was asked by Mr. Serafini to give Mr. Righi a good funeral. Mr. Short gave decedent a funeral which cost $4,183.46 as above set forth. The undertaker appears to have made little or no inquiry as to the financial situation or station in life of decedent and all he knew was that Mr. Serafini told him that decedent had some money in a bank. Mr. Serafini in his testimony states that he knew he had at least $5,000, but that he did not tell this to the undertaker as he recalled it. Mr. Short testified that he did not find out what the amount of decedent's bank account was until the day after he died. At this time the remains of Mr. Righi were already laid out in the casket, the cost of which with services was $3,774.46. Mr. Short says that this was

before the burial but that he could not then change the casket as it was contrary to the law to sell the casket to anybody else.

Where an undertaker contracts with the executor of a decedent's will, he may, ordinarily, hold such person liable for the amount of his bill, and the responsibility for the reasonableness of the charges is transferred to the legal representative who must satisfy the parties interested in the estate and the court in that respect; but where he proceeds at the direction of one without authority to contract for and bind the estate, the law implies a contract on behalf of an executor having assets sufficient for the purpose only to the extent of a funeral suitable to the station in life of decedent as well as not disproportionate to the size of the estate; in other words reasonable under all the circumstances: Ennis' Estate, 76 Pa. Superior Ct. 292, 294; Cullen's Estate, 8 Pa. Superior Ct. 494; Sinnott's Estate, 15 Dist. R. 873.

Here Mr. Short proceeded with the funeral at the direction of John Serafini who had no authority whatever to contract for the funeral and bind decedent's estate.

Under the circumstances we find no justification for giving this man a funeral which costs about half of his entire estate. According to the testimony this man lived in shabby surroundings and his only income at the time of his death was from his miner's pension and possibly social security. Mr. Serafini attempts to justify his request for a good funeral for decedent on the ground that people would be critical of the casket if it were not a nice one. We cannot see how this could affect Mr. Serafini. The evidence is that very few people attended the funeral so that even if this reason had any basis or logic, it would have amounted to little in this particular case.

In accordance with the decisions in this and other States we think that the amount charged for the funeral in this case was grossly unreasonable and excessive. It has been held in this state that in the absence of an authorization by decedent or his family, a funeral director will be permitted to recover for funeral expenses only for such charges as are reasonable in view of the station in life of such decedent and not disproportionate to the size of his estate: Mellon's Estate, 46 D. & C. 287; Gobrecht's Estate, 47 D. & C. 134; O'Hara's Estate, 118 Pa. Superior Ct. 558.

O'Hara's Estate, supra, the court said, at page 562: "It has been the wise policy of the courts to approve only claims for funeral expenses that bear a fair and reasonable proportion to the amount of the estate of a deceased and his situation in life. When undertakers make sales of expensive caskets and pretentious burial accessories, they run the risk of having their claims disallowed."

With the above statements of the law we agree. We think that the undertaker should have made an investigation of this man's circumstances and found out the extent of his estate before going ahead on the word of a person who had no authority to order the funeral. He was generally acquainted with the situation in the neighborhood of Force and Weedville which is also the neighborhood of Cardiff, the residence of decedent, and knew that few, if any, people living there could afford such an expensive funeral for their burial or the burial of any of the members of their family.

We have given full consideration to the record in this matter which was offered in evidence and also to the testimony taken at the hearing and we are of the opinion that $1,300 would have been a sufficient, fair and reasonable amount to spend for the funeral of this decedent.

The court, therefore, makes the following

*Order*

Now, August 7, 1959, the claim of Paul J. Short for funeral bill for Guirino Righi is found to be excessive and unreasonable and is reduced to the sum of $1,300 and the administrator is hereby ordered and directed to restate his account in accordance with this opinion and to make such adjustments and payments as to inheritance tax and payments to heirs of decedent or their representatives as is necessary to comply herewith.